Plaintiff was physically injured and his Ford pick-up truck practically demolished in a collision with a large trailer-truck of the defendant, Frank W. Matthews, in a curve in what is called the Carmel Lake Road, in DeSoto Parish. The collision occurred in the daytime. Plaintiff was driving his own vehicle and was traveling northerly. Defendant's truck was going southerly and was being driven by his agent, a Negro man named Pit Atkins. It was heavily laden with saw logs.
Plaintiff sued to recover damages for his physical injuries and for the value of his truck. The accident's happening is accredited to the negligence of defendant's driver in that he drove the heavily loaded truck at an excessive rate of speed around the curve; that he veered it from its proper course to his left side and encroached upon plaintiff's half of the road; in not having the truck under adequate control; not keeping proper lookout and not giving warning of his presence in the curve.
Defendant exonerates his agent from responsibility to any extent for the collision and places upon plaintiff sole blame therefor in that he: (a) Failed to keep proper lookout, and (b) His speed was so excessive that in his endeavor to negotiate the curve he left his side of the highway and drove into defendant's truck at the time it was on its own side of the road.
In the alternative, defendant employs the above alleged acts of negligence, charged to plaintiff, as a predicate for a plea of contributory negligence that is specially urged against him. Defendant reconvened and sued plaintiff for the damages done his truck and for loss of its use for fourteen days.
Plaintiff, when injured, was in the employment of the Kirby Lumber Corporation, to whom the Texas Indemnity Insurance Company had issued a policy of insurance to protect the assured against all claims and demands upon it by injured workmen for compensation, etc. The insurer paid plaintiff compensation at $20 per week for three weeks and paid the bills of the physicians who treated him for the alleged injuries. The insurer intervened in the suit and prayed for judgment against both plaintiff and defendant in the event plaintiff should succeed herein for the amounts paid by it to plaintiff or for his account under the referred to contract of insurance.
The demands of all parties, plaintiff, defendant and intervenor, were rejected and their suits dismissed. Evidently the lower court reached the conclusion that the drivers of both vehicles were equally negligent in the accident.
Plaintiff and the intervenor appealed. Since defendant did not appeal, his reconventional demand is not before us.
The case was tried before the late lamented Hal A. Burgess, judge of the Eleventh District Court for DeSoto Parish, but he departed this life prior to rendering judgment therein. Judge Ponder, of the same district, on the record as previously built up, rendered judgment in the case. For this reason it is urged here that the usual weight accorded to a decision of the trial judge on factual issues should not find place in the case.
The curve wherein the collision occurred is a thirty-seven degree one. Its length is two hundred forty feet. From its south end the Carmel Lake Road courses northerly and from its northern end said road courses easterly. The road is about eighteen feet *Page 668 
wide at the point of collision. It is surfaced with gravel. At the time of the accident, July 20, 1945, the area adjoining the concave (east) side of the curve was covered with a growth of grass, weeds, etc., so high and dense that vision through that area toward and from each end of the circle was totally obscured. This being true, a motorist at one end of the curve cannot see another motorist at the other end. This curve, it is conceded by all who are acquainted with it, is a highly dangerous one. Motorists thereon for their own safety, at least, must drive carefully.
As plaintiff was traveling northerly he was due to be on the inner (east) side of the curve, and defendant's truck should have occupied the opposite side thereof.
Plaintiff testified that after he had traversed a goodly part of the curve he observed the defendant's truck coming toward him, some ninety or one hundred feet away, at a speed of eighteen or twenty miles per hour. It was then entering the north end of the curve. He says: "He was coming toward me, and, as I said, you don't have time to figure out what to do, and I saw he was coming at me and was going to run over me, and about that time he gave me a sideswipe and I fell away."
Plaintiff's truck struck the other one at an angle. Its left front end, left side and top were so badly damaged that it would be hard to precisely describe the same. The only injury to the defendant's truck was to the running board and to the left rear dual wheels of the trailer. A part of the force of the impact was against the logs, the forward ends of which were only two feet or so from the back of the truck's cab. The impact caused plaintiff's car to rebound a few feet with front end pointing northerly and its rear right corner driven into the embankment adjacent to the highway. The defendant's truck left the highway, traveled to its right about sixty feet and turned completely over, all wheels being up in the air.
Plaintiff is positive defendant's truck was across the road's center and to some extent on his side thereof when the collision occurred; that the driver had lost control of it; and, of course, he is equally positive that he at all times held to his own side of the highway. He testified that he was going at a speed of from ten to fifteen miles per hour.
Defendant's driver and the colored man riding with him testified that his truck was traveling at a speed of eight to ten miles per hour. He was going down grade and in fourth gear. It is safe to say that his speed was greater than this estimate, but, perhaps, not more than the estimate fixed by plaintiff, which was not excessive.
[1, 2] Accepting plaintiff's own testimony as a criterion for the fixing of responsibility for the accident, he is barred from recovery. To plaintiff's right, between the margin of the gravel and the embankment, there were three or four feet additional space of grass covered surface, thus giving to him a lane of approximately thirteen feet on which to travel. His truck is five feet three inches wide. Its running condition was good and going at a speed of fifteen miles per hour it could have been stopped within a very few feet. Accepting plaintiff's version of the facts of the accident, he saw the other truck coming toward him, over the road's center in ample time to have stopped his own vehicle or to have pulled it several feet to the right and into a zone of safety until the impending danger had passed. Obviously, on this theory of the accident, he had the last clear chance to avert it and failed to avail himself of the opportunity then open to him. This legal principle is not invoked by defendant as a defense to the suit, but this court held in the case of Iglesias v. Campbell, La. App., 175 So. 145, 147, that when the facts warranted application of the principle a court had the right, on its own motion, to do so. The Supreme Court, on application for writ of review, approved this ruling.
[3] However, we are convinced as was the lower court, that plaintiff was not entirely on his side of the road when the accident happened. There is one physical fact, established to our satisfaction, that supports the testimony of the two Negro men with respect to the position of plaintiff's truck at the time of the impact. They say his truck was, to some extent, on their side of the center of the road. Two deputy sheriffs arrived upon the scene very soon after the accident occurred and made *Page 669 
close inspection of the locus and of the two vehicles. They found that the left end of the front spring of plaintiffs truck, from the impact, broke from its attachment and fell to the gravel. They testified that there was a continuous shallow furrow in the gravel from the point where the injured spring first fell upon it to the spring's end, after the truck rested against the embankment. One of these officers is quite positive that the furrow began west of the center of the road. The other officer was not so certain on this point, but was certain it began near the center.
The end of the spring in question sets back from the wheel above the axle, several inches, and pictures in the record make it clear that the fender extends beyond the side and front of the tire. Therefore, assuming that the spring fell to the ground simultaneously with the impact, whether on or near to the road's center, the conclusion is inescapable that the left front part of the truck was beyond the center of the road when the collision occurred. This being true, the conclusion is inevitable that plaintiff is certainly in error as to the position of his truck, with reference to the center of the road, when the collision occurred. His own negligence bars recovery by him.
For the reasons herein assigned, the judgment appealed from is affirmed with costs.